IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-_____

**CBD970, LLC**, a Colorado Limited Liability
Company, also known as CBD970.com, LLC,

      Plaintiff,

v.

**LABYRINTH HOLDINGS, INC.**, a Nevada
Corporation;
**ROBERT HELLMAN**, Individually;
**JAMES HILL**, Individually; and
**LABYRINTH HOLDINGS, LLC,**
a California Limited Liability Company,

      Defendants.

_____/

---

## VERIFIED COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, **CBD970, LLC**, a Colorado Limited Liability Company, also known as

CBD970.com, LLC ("CBD970"), by and through its undersigned counsel, hereby sues and

submits this Verified Complaint against the **Defendants, LABYRINTH HOLDINGS, INC.**, a

Nevada Corporation ("Labyrinth"); **ROBERT HELLMAN**, Individually ("Hellman"); **JAMES**

**HILL**, Individually ("Hill"); **LABYRINTH HOLDINGS, LLC**, a California Limited Liability

Company ("Labyrinthllc"), for Damages and states as follows:

1

## PARTIES

**I.**  Plaintiff:

1.  Plaintiff, **CBD970, LLC**, is a Colorado Limited Liability Company, registered by the Colorado Secretary of State on August 30, 2018, and located and doing business at 5454 County Rd 346, Silt, Garfield County, Colorado, and is sui juris.

2.  At all times material hereto, the sole member of Plaintiff, **CBD970, LLC**, has been Kenneth Sack, a citizen of the State of Colorado.

3.  "cbd970.com, LLC" is an artificially created name by defendants to refer to **CBD970, LLC**, which is a Colorado Limited Liability Company.

**II.**  Defendants:

4.  At all times material hereto, the Defendant **LABYRINTH HOLDINGS, INC.**, ("Labyrinth"), is a for-profit Nevada Corporation assigned Nevada Business No. NV20191109550, Entity registration No. E0060842019-7, and incorporated February 8, 2019.

5.  Labyrinth, maintains its principle place of business and registered agent in the State of Nevada and is Sui Juris.

6.  At all times material hereto, the Defendant, **ROBERT HELLMAN**, individually ("Hellman"), has been a citizen of the State of California residing in Temecula, Riverside County, California, who is and has been doing business individually and on behalf of Labyrinth and Labyrinthllc within the State of Colorado and engaging in the conduct hereinafter complained of in this action, and is sui juris.

7.  At all times material hereto, the Defendant, **JAMES HILL** individually ("Hill"), has been a citizen of the State of California residing in Temecula, Riverside California, who is and

has been doing business individually and on behalf of Labyrinth within the State of Colorado and engaging in the conduct hereinafter complained of in this action, and is sui juris

8.      At all times material hereto, Hellman has served as President and as a director of Labyrinth and Co-Managing Member of Labyrinthllc.

9.      At all times material hereto, Hill has served as Secretary-Treasurer and as a director of Labyrinth and Co-Managing Member of Labyrinthllc.

10.      At all times material hereto, the Defendant, **LABYRINTH HOLDINGS, LLC**, ("Labyrinthllc") has been a California Limited Liability Company with its principal place of business located at 27349 Jefferson Ave., Ste 205, Temecula, CA, 92590; Hellman and Hill, both citizens of the State of California, are the sole members and managers of Labyrinthllc.

11.      At all times material hereto, Labyrinth and Labyrinthllc, engaged in contractual negotiations and entered into a formal contract entitled Labyrinth Holdings Processing Agreement with the Plaintiff on August 30, 2019 ("Contract"). A copy of the Contract is attached hereto as Exhibit "A" and incorporated herein for all purposes.

12.      At all times material hereto, Defendants, Robert Hellman and James Hill, (1) jointly caused the filing of the Articles of Incorporation of Labyrinth; (2) jointly caused the filing of the Articles of Organization of Labyrinthllc; (3) jointly control the Management of Labyrinth; (4) jointly control the management of Labyrinthllc; (5) have conceptualized the fraudulent and illegal activities hereinafter preformed through Labyrinth and Labyrinthllc; (6) have utilized Labyrinth and Labyrinthllc as front organizations to perpetrate the fraudulent and illegal activities hereinafter described in this action; (7) jointly caused Labyrinth and Labyrinthllc to do business and act in such a manner that the actions of Hellman, Hill, Labyrinth and Labyrinthllc were so comingled that the actions and existence of Labyrinth could not be distinguished from the actions of

Labyrinthllc and the actions of Hellman and Hill could not be distinguished from the actions of Labyrinth and labyrinthllc; an example of such co-mingling is set forth Exhibit "A". Exhibit "A" reflects Labyrinth as the named party to the Contract, the Contract contains a signature block for Labyrinthllc and the Contract is executed by Hellman, individually; as a result, Hellman, Hill, Labyrinth, and Labyrinthllc function as alter egos of each other at the direction of Hellman and Hill..

13.     Exhibit "A" was prepared by or one behalf of all Defendants; the Defendants specifically utilized CBD970.com, LLC as a fictitious name to mean to **CBD970, LLC**, a Colorado Limited Liability Company.

14.     Exhibit "A", while designating Labyrinth as a party to the contract and naming Labyrinthllc in the Contract's signature block , was executed by Hellman.

15.     At all times material hereto, the Defendants acted in their individual, collective and/or corporate capacities as it relates to the torts and breaches against the Plaintiff.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter presented in this Complaint pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs and diversity of citizenship exists between Plaintiff and Defendants, as authorized by 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(c)(1), and the Paragraph 43 of the Contract attached hereto as Exhibit "A" specifically provides for Jurisdiction, Choice of Law and Venue to be in the State and Federal courts having jurisdiction in of actions Garfield County, Colorado.

17.     Defendants caused the direct transaction of business in the State of Colorado by negotiating Exhibit "A" in Garfield County, Colorado, and establishing and conducting their

business for the alleged extraction from hemp into oil an refinement of the oil into the contractually obligated products described in Exhibit "A" upon real property located in Garfield County, Colorado, and engaging in a substantial part of the tortious actions and events, complained of herein in Garfield County, Colorado.

18.   This Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack as there is diversity of the Plaintiff and the Defendants and, the Contract for Services which gives rise to a substantial part of the allegations herein, specifically provides Jurisdiction, Choice of Law and Venue to be "exclusively in the State and Federal Courts located in Garfield County, Colorado."

19.   The Defendants have transacted business in Colorado and engaged in a substantial part of the tortious actions and events complained of herein have taken place in Garfield County, Colorado, giving rise to this action in Garfield County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, breach of contract, omissions, diversions and/or deprivation of Plaintiff's property..

20.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions and events giving rise to this action in Garfield County, Colorado, including the intentional, knowing, deliberately reckless, and/or negligent material misrepresentations, breach of contract, omissions, theft and/or embezzlement, conspiracy to defraud, and wrongful enterprise made to and against the Plaintiffs, not including loss of profits, compensatory, actual and/or punitive or treble damages.

21.   This Complaint is not a collusive action to confer jurisdiction that the Court would otherwise lack.

## INTRODUCTION & GENERAL ALLEGATIONS

22.     Plaintiff is owned and managed exclusively by Kenneth Sack.

23.     Eagle Springs Organic, LLC, a single member Colorado Limited Liability Company,  exclusively owned by Kenneth Sack, is the owner of a large parcel of land (approximately 1,800 acres), located in Garfield County, Colorado, utilized for farming operations and is the owner of the real property upon which the subsequently described trailers and extraction equipment of the Defendants were placed during the  Defendants' purported performance of their contractual obligations required by the Contract.

24.     At all times material hereto, CBD970 LLC properly obtained an industrial hemp license for handling, propagation, cultivation, harvesting, and storing industrial hemp through the State of Colorado and the State of Colorado Department of Agriculture, pursuant to the Colorado statutes codified at Colorado Revised Statutes sections 35-61-101 to 109.

25.     At all times material hereto, Kenneth Sack, prior to getting involved in the Colorado hemp industry, retained Adam Ayers as his chief geneticist and hemp cultivator.  Arguably, Mr. Ayers is the foremost geneticist in the country when it comes to seeds, genetics and bringing large scale crops to harvest.

26.     Upon information and belief, due to the efforts and skills of Adam Ayers, in the growing year of 2019, the Plaintiff successfully cultivated and harvested one of the largest hemp crops based upon cannabidiol "CBD" content or value in the United States.  This harvest consisted of approximately 200 acres averaging approximately 2,000 plants per acre and maintaining an average "CBD" value of 12% per plant (the "Crop").

27.    In the first quarter of 2019, Hellman and Hill met with Kenneth Sack at the Plaintiff's property in Garfield County, Colorado, in order to introduce and solicit Labyrinth's purported hemp extraction business and offer its services to the Plaintiff.

28.    At all times material hereto, Labyrinth held itself to Kenneth Sack, as sole member of the Plaintiff as a lawful, mobile extraction company, manufacturing industrial hemp in lawful compliance with the Colorado State related cannabis and hemp laws as well as in conjunction with the Federal Agricultural Act of 2014 and 2019.

29.    As material factors to induce Plaintiff to agree to enter into the Contract attached hereto as Exhibit "A",  Hellman and Hill purporting to act on behalf of Labyrinth, but, in fact, acting on their individual behalves, on behalf of Labyrinth, and on behalf of Labyrinthllc, orally represented the following to Plaintiff in person in Garfield County, Colorado, on multiple occasions during negotiations preliminary to execution of the Contract:

a.    The oil, isolate, distillate and other  finished product they would produce from Plaintiff's Crop would not be considered as a Schedule I narcotic in any State or within any Federal jurisdiction, nor a violation of the Controlled Substance Act[1] ("CSA"), nor with any State's own trafficking or narcotics laws;

b.    They were the only FDA approved extraction company in the country, doing business already in the State of Colorado;

c.    Claimed that their facilities were GMP certified, FDA approved and hooked up to a video surveillance system that allowed the FDA to link into their camera systems and view the operations live; and

---

[1] *See*, 21 U.S.C. Sec. 812(c), and 21 C.F.R. Sec. 1308.11(23) and (31).

      d.  Their unique and proprietary extraction equipment removed all of the THC from the hemp oil through their unique refinement process.

30.    As a direct and proximate result of the above-described representations of Defendants, the Plaintiff materially relied on the representations and made the decision to engage in business with them and not use the services of any other third-party extractor.

31.    At all times material hereto, in order to comply with both the State and Federal narcotic, controlled substance, trafficking, and industrial hemp laws, Defendants were required to extract hemp into CDB distillate at levels not exceeding 0.3% tetrahydrocannabinol ("THC"); any hemp product produced by Labyrinth's extraction process which exceeded 0.3% THC content per gram constituted a violation of Colorado and Federal Laws.

32.    At all times material hereto, the Defendants knew, but intentionally kept the matter secret and hidden from the Plaintiff, that Defendants' extraction process causes the cannabinoids, including the THC molecule, to compound; thus, the extraction method utilized by Defendants for production of hemp crude oil caused significant increases in the THC levels in any oil produced and provided to the Plaintiff.

33.    Exhibit "A" required Plaintiff to provide Labyrinth with "up to [Redacted] pounds" of hemp biomass from Plaintiff's Crop. From Plaintiff's biomass, Labyrinth was required to extract the hemp oil and refine it into CBD distillate with a 0.0% delta-9 tetrahydrocannabinol "THC" ("T-Free"); which was to comply with all State and Federal related laws.

34.    The production of Plaintiff's biomass, which was set aside for extraction under Exhibit "A", was biomass worth approximately $250.00 per point, including propagation of enough seeds and clones to cultivate to maturity and then harvest and store.

35.     Assuming a CBD content of at least 8%, approximately 35 pounds of Plaintiff's biomass was to be converted by the Defendants resulting in 1 liter of CBD distillate, which would then be refined by Defendants into T-Free before being sold to Plaintiff.

36.     The cost to Plaintiff to convert biomass to distillate was to be approximately Redacted per pound.  Approximately Redacted pounds of biomass was to be required to extract one (1) Liter of distillate.  Plaintiff would then pay Defendants Redacted per Liter to convert the distillate into T-Free.

37.     As of August 30, 2019, the market price of T-Free was $5,000.00 per Liter, the cost to Plaintiff should have been Redacted per Liter and Plaintiff's net profit would have been approximately Redacted per Liter.  By dividing Redacted pounds of biomass by each Redacted pounds required to make 1 Liter of T-Free, Plaintiff has expected to obtain approximately Redacted of T-Free from Defendants under the terms of Exhibit "A", thereby resulting in gross sales of Redacted and a net profit of approximately Redacted .

38.     Although the sale of the equivalent amount of Plaintiff's biomass in its pre-extraction state would have been worth approximately $36,000,000.00 in gross revenue to Plaintiff and net revenue of approximately $30,000,000.00 after deducting the seed to harvest cost, the opportunity to more than double Plaintiff's profits was clearly the icing on the cake provided by Defendants' representations, warranties and the terms of Exhibit "A".

39.     On August 30, 2019, the Plaintiff and Defendants (Defendants acting through Labyrinth) entered into Exhibit "A" attached hereto.

40.     Subsequent to August 30, 2019, Plaintiff became aware that the Defendants were struggling in the performance of their contractual obligations as a result of the following:

a. Because Defendants' extraction operations were mobile, Labyrinth's extraction equipment was contained within mobile trailers. This required, needed and necessary permits, electrical connections, concrete or ground foundations, operating licenses, and access to ingress and egress upon the property in Garfield County, Colorado; the cost of same was advanced by Plaintiff on behalf of Defendants;

b. Defendants were constantly experiencing processing delays;

c. Defendants continued to make excuses as to the quality of finished goods coming from its extraction laboratory not meeting the minimum required specifications of material representations made by Defendants;

d. Defendants failed to demonstrate to Plaintiff how the THC, within the oil produced from the biomass provided by Plaintiff pursuant to Exhibit "A" was being removed in compliance with the laws of the State and Federal governments;

e. Defendants were unable to provide documentation confirming that the amount of biomass provided was generating the contractually agreed upon amount of finished product;

f. Defendants were providing Plaintiff contractually noncompliant CBD distillate, as reflected in the Certificate of Analysis ("COA") testing results of the extracted liquid.

g. Defendants failed to replace the [Redacted] kilos of contractually noncompliant CBD distillate delivered to Plaintiff with compliant distillate.

41.    In spite of representing to Plaintiff prior to the execution of Exhibit "A" that Defendants had sufficient financial resources to meet their contractual obligation to turn Plaintiff's

biomass into T-Free, Hill and Hellman began soliciting Sack for money, claiming that their operations needed more money to continue operations and to pay for T-Free equipment and processes.  Without raising capital they would no longer be in a position to make anything other than hemp oil containing illegal amounts of THC.

42.     Plaintiff provided Defendant with COAs certifying that the product extracted by Defendants' equipment from the biomass provided by Plaintiff contained illegal amounts of THC demonstrating a complete breach of Defendants' contractual obligations to Plaintiff.

43.     Defendants, through Hellman and Hill, finally admitted to Plaintiff, through Kenneth Sack and Adam Ayers, that Labyrinth's equipment could not remediate the THC and that portion of the hemp oil refinement would have to be subcontracted out to a third party which would require additional money.

44.     In February 2020, Plaintiff learned that Defendants were secretly sending oil extracted from Plaintiff's biomass to Rifle Onion Company, LLC, attn: Macario Carrillo, located at 1404 County Road 223, Rifle, Garfield County, Colorado.

45.     In February 2020, Plaintiff learned that the Defendants were improperly diverting oil extracted from Plaintiff's biomass through Rifle Onion Company, LLC, to a company in Oregon named Easy Street Services Company.

46.     In February 2020, Plaintiff learned that the Defendants were secretly making hemp oil from Plaintiff's hemp biomass and were secretly transporting the same to third parties outside of the State of Colorado.

47.     By February 2020, it became apparent that the Defendants' above-described representations, promises and assurances made to Plaintiff to induce Plaintiff to enter into the

Contract attached hereto as Exhibit "A" were not only all false, but were known by the Defendants to be false when the representations were made to Plaintiff prior to August 30, 3019.

48.     In early February 2020, the Plaintiff demanded to see the THC destruction process purportedly utilized by Labyrinth upon the oil extracted from Plaintiff's biomass to obtain the 0.0% delta-9 tetrahydrocannabinol "THC" percentage agreed to by Defendants, which demand, previously framed as requests, had been previously denied by Defendants. Defendants relented and scheduled an appointment for Plaintiff to observe the THC removal process. When Plaintiff, acting through Kenneth Sack, arrived for the appointment to see the process, Hellman represented that the equipment was experiencing mechanical problems, and that they would not be able to duplicate the refinement processes at this time.

49.     Plaintiff also demanded evidence from Defendants of Labyrinth's purported GMP certification and FDA approval of the extraction process, which Defendant failed to provide.

50.     Plaintiff also demanded Defendants provide proof of the supposed WIFI video link that the FDA allegedly had into Labyrinth's extraction system; again the Defendants had no evidence supporting their prior representation of the existence of such a link.

51.     Upon Plaintiff learning of:

    a.   Defendants' theft or diversion of Plaintiff's hemp biomass and oil made therefrom,

    b.   The fact that of the initial approximately [Redacted] pounds of the Plaintiff's Crop's biomass delivered to Defendants for extraction processing, Defendants refused to account for the amount of the biomass used in the extraction resulting in the 291 kilos of contractually non-compliant distillate and refused to account for the disposition of the remaining portion of the initial approximately [Redacted] pounds delivered to Defendants,

  c. Defendants' continuous breach of their promises of supplying THC-Free distillate in accordance with the Contract;

  d. Defendants completely false representations that their equipment could remove all of the THC contained within the extracted hemp oil,

  e. Defendants illegally trafficking in unlawful THC oil made upon Plaintiff's property,

Plaintiff notified Defendants of their numerous breaches of contract and material misrepresentations inducing Plaintiff to enter into Exhibit "A".

52. By that date, Plaintiff had advanced approximately $50,000.00 for the infrastructure costs to enable Defendants' extraction equipment to be placed on Eagle Springs Organic, LLC's real property, had paid to the Defendant a sum of approximately [Redacted], including the initial [Redacted] deposit required by the Contract, and received [Redacted] kilos of contractually non-compliant distillate from Defendants.

53. Shortly thereafter, Hellman, on behalf of Defendants, sent Sack an electronic communication that the Contract was cancelled and that the additional oil extracted from Plaintiff's biomass that would be in the possession of his attorney or third party.

54. On February 26, 2020, the Defendants finally moved Defendants' trailers and equipment off of the property.

55. As a result of Defendants' breach of contract, Plaintiff never received from Defendants:

  a. The T-Free that was promised to replace the illegal or non-conforming [Redacted] kilos of CBD distillate oil previously produced by Defendants;

    b.  Contractually compliant CBD distillate for which the Plaintiff had paid ██████ ;

    c.  An accounting of the use and disposition of the approximately ██████ pounds of hemp biomass delivered to Defendant;

    d.  Repayment of the ██████ paid to Defendants for T-Free;

    e.  Reimbursement for the approximately $50,000 in infrastructure costs absorbed by the Plaintiff in order to accommodate the Defendants trailers (mobile extraction labs);

    f.  Extraction and processing into legal CBD oil and Isolate of the approximately ██████ pounds of hemp set aside from Plaintiff's Crop.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### (Breach of Contract Against All Defendants)

56.    Plaintiff reaffirms and realleges paragraphs 1-55 above and incorporates them herein by reference as if fully set forth.

57.    As a result of the numerous failures of Defendants to perform the obligations required to be performed under the terms of Exhibit "A", Defendants breached the Contract with Plaintiff.

58.    Plaintiff has performed all conditions precedent required by the terms of Exhibit "A" attached hereto or such conditions have been waived or excused.

59.    As a result of Defendants' breach of the Contract, Plaintiff has been damaged as follows:

---

[2] The ██ kilos of non-compliant isolate represented only a portion of the $██████ paid by Plaintiff.

a. Expenditure of approximately $50,000.00 on infrastructure to house Labyrinth's trailers and extraction equipment;

b. Loss of ▮Redacted▮ paid to Defendants for extraction and production of T-Free;

c. Loss of the value of the portion of the approximately ▮Redacted▮ pounds of Plaintiff's Crop delivered to Defendants, not utilized in producing the ▮Reda▮ pounds of contractually non-compliant CBD distillate delivered to Plaintiff, which is completely unsaleable, and diversion of oil produced from Plaintiff's initial delivery to third-parties by Defendants;

d. Diminution in value of the remaining approximately ▮Redacted▮ pounds stored by Plaintiffs in expectation of Defendants' timely extraction processing in compliance with the terms of the Contract; and

e. Lost profits resulting from the loss of Plaintiff's ability to sell contractually compliant T-Free, which said Defendants were obligated create from the approximately ▮Redacted▮ pounds of hemp reserved from Plaintiff's Crop for this purpose.

60.     Plaintiff has employed the undersigned counsel to represent it in this action and has agreed to pay a reasonable attorney's fee therefore.

61.     Pursuant to paragraph ▮Re▮ of Exhibit "A", should Plaintiff be the prevailing party on this claim, Plaintiff is entitled to an award of its reasonable attorney's fees and other expenses incurred in this action.

## SECOND CLAIM FOR RELIEF
### (Violation of the Colorado Consumer Protection Act against All Defendants)

62.     Plaintiff reaffirms and realleges paragraphs 1-55 above and incorporates them herein by reference as if fully set forth.

63.    This is a cause of action against the Defendants for violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq. (2018).

64.    At all times material hereto Plaintiff, Labyrinth, Labyrinthllc, Hellman and Hill, are each a "person" as defined in Colo. Rev. Stat. § 6-1-101(6).

65.    At all times material hereto, Plaintiff's hemp as referred to in Exhibit "A" attached hereto is "property" as defined in Colo. Rev. Stat. § 6-1-101(8).

66.    Colo. Rev. Stat. § 6-1-101(1), states: "Advertisement" includes the attempt by publication, dissemination, solicitation, or circulation, visual, oral, or written, to induce directly or indirectly any person to enter into any obligation or to acquire any title or interest in any property."

67.    Plaintiff has standing to assert this claim against the Defendants pursuant to Colo. Rev. Stat. § 6-1-113(1)(c), which states:

> **(1)** The provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article. An action under this section shall be available to any person who: **(c)** In the course of the person's business or occupation, is injured as a result of such deceptive trade practice.

68.    At all times material hereto, Defendants were engaged in or, alternatively Hill and Hellman caused Labyrinth and Labyrinthllc to engage in the deceptive trade practices set forth in the following paragraph number.

69.    The above-described actions of the Defendants constitute violations of the following subsections of Colo, Rev. Stat. § 6-1-105(1) of the Colorado Consumer Protection Act:

> (1) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:
>
>     (c) Either knowingly or recklessly makes a false representation as to affiliation, connection, or association with or certification by another;
>     (e) Either knowingly or recklessly makes a false representation as to the characteristics … of … property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;

(g) Represents that … property [is] of a particular standard, quality, or grade … if he knows or should know that they are of another;

(u) Fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

70.    As a result of Defendants' engaging in the said deceptive trade practices, Plaintiff is entitled to an award, at Plaintiff 's election, of the following damages against the Defendants pursuant to the following subsections of Colo. Rev. Stat. § 6-1-113:

(2)  Except in a class action or a case brought for a violation of section 6-1-709, and notwithstanding any other law, any person who, in a private civil action, is found to have engaged in or caused another to engage in any deceptive trade practice listed in this article 1 is liable in an amount equal to the sum of:

(a)  The greater of:

(I)  The amount of actual damages sustained, including prejudgment interest of either eight percent per year or at the rate provided in section 13-21-101, whichever is greater, from the date the claim under this article 1 accrued; or

(II)  Five hundred dollars; or

(III)  Three times the amount of actual damages sustained, if it is established by clear and convincing evidence that such person engaged in bad faith conduct; plus

(b)  In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court.

(2.3)  As used in subsection (2) of this section, "bad faith conduct" means fraudulent, willful, knowing, or intentional conduct that causes injury.

(2.7)  Notwithstanding the provisions of subsection (2) of this section, in the case of any violation of section 6-1-105 (1)(ss), the court may award reasonable costs of the action and attorney fees and interest….

71.    As a result of the Defendants' deceptive and unfair trade practices, Plaintiff has been damaged as follows:

a.  Expenditure of approximately $50,000.00 on infrastructure to house Labyrinth's trailers and extraction equipment;

b.  Loss of Redacted paid to Defendants for extraction and production of T-Free;

c. Loss of the value of the portion of the approximately ██████ pounds of Plaintiff's Crop delivered to and utilized by Defendants to produce contractually non-compliant CBD distillate delivered to Plaintiff, which is completely unsaleable, and diversion of oil produced from Plaintiff's initial delivery to third-parties by Defendants;

d. Diminution in value of the remaining approximately ██████ pounds stored by Plaintiffs in expectation of Defendants' timely extraction processing in compliance with the terms of the Contract; and

e. Lost profits resulting from the loss of Plaintiff's ability to sell contractually compliant T-Free, which said Defendants were obligated create from the approximately ██████ pounds of hemp reserved from Plaintiff's Crop for this purpose.

72. Plaintiff has employed the undersigned counsel and has agreed to pay a reasonable attorney's fee therefore.

### THIRD CLAIM FOR RELIEF
### (Common Law Fraud in the Inducement against All Defendants)

73. Plaintiff reaffirms and realleges paragraphs 1-55 above and incorporates them herein by reference as if fully set forth.

74. This claim is pleaded in the alternative to the First Claim.

75. At all times material hereto, in order to comply with both the State and Federal narcotic, controlled substance, trafficking, and industrial hemp laws, Labyrinth was required to extract industrial hemp at levels not exceeding 0.3% tetrahydrocannabinol ("THC"); any industrial

hemp product produced by Labyrinth's extraction process which exceeded 0.3% THC constituted a violation of Colorado and Federal Laws.

76.    At all times material hereto, the Defendants knew, however, kept the matter secret and hidden from the Plaintiff, that Labyrinth's extraction process causes the cannabinoids, including the THC molecule, to compound; thus, the production of hemp crude oil significantly increases the THC levels in any oil produced and provided to a client, such as the Plaintiff.

77.    As material factors to induce Plaintiff to agree to enter into the Contract attached hereto as Exhibit "A", Hellman and Hill purporting to act on behalf of Labyrinth, but, in fact, acting on their individual behalves, on behalf of Labyrinth, and on behalf of Labyrinth's alter ego, Labyrinthllc, orally represented the following to Plaintiff on multiple occasions during negotiations:

a.    The oil, isolate, distillate and other finished product they would produce from Plaintiff's Crop would not be considered as a Schedule I narcotic in any State or with in any Federal jurisdiction, nor a violation of the Controlled Substance Act[3] ("CSA"), nor with any State's own trafficking or narcotics laws;

b.    They were the only FDA approved extraction company in the country, doing business already in the State of Colorado;

c.    Claimed that their facilities were GMP certified, FDA approved and hooked up to a video surveillance system that allowed the FDA to link into their camera systems and view the operations live;

d.    They had a unique monetary formula for monetizing the Plaintiff's crop by performing the hemp extraction services on site with all of their resources, thereby resulting in

---

[3] *See*, 21 U.S.C. Sec. 812(c), and 21 C.F.R. Sec. 1308.11(23) and (31).

Plaintiff making more money off of Defendants' extraction and refinement of the biomass into T-Free than Plaintiff would make if Plaintiff utilized another extraction company to process the entire biomass of Plaintiff's Crop; and

e.      Their unique and proprietary extraction equipment remove all of the THC from the through their unique refinement process.

78.      Additionally, Defendants set the sales price of contractually compliant CBD oil and CBD isolate to be purchased by Plaintiff after refining Plaintiff's hemp at an unrealistically low figure for the express purpose of materially inducing Plaintiff to contract with Labyrinth and its alter ego, Labyrinthllc for the production of contractually compliant CBD distillate and/or CBD isolate.

79.      At the time of the representations and/or omissions, Defendants knew that the representations were false or were aware that Plaintiffs did not know whether the representations were true or false.

80.      Defendants made the said representations with the intent that Plaintiffs would rely on the representations and/or omissions, and in fact Plaintiffs did rely on the representations and/or omissions.

81.      Plaintiffs reliance was reasonable and justified.

82.      As a direct and proximate result of the above-described representations of Defendants, the Plaintiff entered into the Contract.

83.      But for the above-described representation of the Defendants, Plaintiff would not have entered into the Contract.

84.     Plaintiff's reliance upon Defendants' false statements and omissions of material facts and failure to disclose adverse material facts caused Plaintiffs damages including, but not limited to:

   a.   Expenditure of approximately $50,000.00 on infrastructure to house Labyrinth's trailers and extraction equipment;

   b.   Loss of Redacted paid to Defendants for extraction and production of T-Free;

   c.   Loss of the value of the portion of the approximately 60,000 pounds of Plaintiff's Crop delivered to and utilized by Defendants to produce contractually non-compliant CBD distillate delivered to Plaintiff, which is completely unsaleable, and diversion of oil produced from Plaintiff's initial delivery to third-parties by Defendants;

   d.   Diminution in value of the remaining approximately Redacted pounds stored by Plaintiffs in expectation of Defendants' timely extraction processing in compliance with the terms of the Contract; and

   e.   Lost profits resulting from the loss of Plaintiff's ability to sell contractually compliant T-Free, which said Defendants were obligated create from the approximately Redacted pounds of hemp reserved from Plaintiff's Crop for this purpose.

85.     Plaintiff reserves the right to seek to amend this Third Claim to include a claim for exemplary damages in accordance with Colo, Rev. Stat. § 13-21-102(1.5).

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, for the reasons alleged herein, Plaintiff prays for this Court to enter judgment against the Defendants and in favor of Plaintiff as follows:

A.  On the First Claim, an award of Plaintiff's damages plus a reasonable attorney's fee, other expenses and costs of this action;

B.  On the Second Claim, an award of Plaintiff's statutory damages including a reasonable attorney's fee, other expenses and costs of this action; and

C.  On the third Claim an award of Plaintiff's damages plus costs of this action.

## JURY DEMAND

**Plaintiff demands a jury trial of all issues triable as of right by a jury.**

DATED this  4th   day of March, 2020.

S/ *Craig A. Brand, Esq.*

**Craig A. Brand, Esq.**
Mystic Law, P.A.
6411 S. Jamaica Circle
Englewood, Colorado 80111
Telephone: (305) 878-1477
E-mail: Craig@ganjalaw.com
Attorney for Plaintiff

## VERIFICATION OF COMPLAINT

STATE OF COLORADO  )
                                          ) SS:
COUNTY OF GARFIELD)

      ON THIS DAY personally appeared before me, KENNETH SACK, personally known to me or who produced the following identification ___DL_____, who after being duly sworn, deposes and says that he is the sole member and manager of CBD970, LLC, a Colorado Limited Liability Company, and the facts set forth in the above Complaint are true and correct.

CBD970, LLC

By: _____

     KENNETH SACK, Sole Member and
     Manager

Sworn to and subscribed before
me on March 4, 2020.

CHRISTI SKINNER
NOTARY PUBLIC - STATE OF COLORADO
NOTARY ID 19994030378
MY COMMISSION EXPIRES JUL 8, 2023

NOTARY PUBLIC STATE OF COLORADO

My Commission Expires: July 8, 2023